UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUSTIN BRODHEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-04170-TAB-TWP |
| | ) |
| J. DODD, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

Plaintiff Justin Brodhead brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment rights by using excessive force during his arrest.  Pending before the Court is Defendants' motion for summary judgment. [Filing No. 41].  For the reasons discussed below, Defendants are entitled to summary judgment on Brodhead's claims.

**II.  Procedural Context**

Defendants filed their summary judgment motion on April 15, 2020.  [Filing No. 41.] Despite requesting and being granted two extensions of his response deadline [Filing Nos. 47 and 51], Brodhead failed to respond to the summary judgment motion.  Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record.  *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion.  The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680,

683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission.").  This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).  Despite Brodhead's failure to respond, the Court nevertheless views the record in the light most favorable to him and draws all reasonable inferences in Brodhead's favor.  See *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  Accordingly, the following facts, unopposed by Brodhead and supported by admissible evidence, are accepted as true.

### III.    Factual Background

On June 2, 2018, Officer Jeramie Dodd and Officer Drew Wallsmith responded to a report of an unwelcome guest battering individuals inside a residence in Kokomo, Indiana. [Filing No. 43-2, at ECF p.3.]  While the officers were en-route, dispatch reported receiving additional calls on the incident where they could hear screaming and the mention of a firearm. [Filing No. 43-2, at ECF p. 3.]

Upon arriving at the residence, the officers saw a van parked outside with a shattered windshield.  [Filing No. 43-2, at ECF p. 3.]  They also saw a broken stone statue lying in the street that appeared to have been used to shatter the windshield.  [Filing No. 43-2, at ECF p. 3.] A neighbor approached the officers, pointing at the residence and asking them to "go make sure Laurie [was] okay." [Filing No. 43-1 at ECF p. 3.]  Dodd could hear a man talking in the backyard and went to the side of the home.  [Filing No. 43-1, at ECF p. 3.]  Dodd then heard a man on the other side of the fence say, "Ya'll motherf***in' police are going to have to kill me tonight!"  [Filing No. 43-1, at ECF p. 3.]  Dodd told the man to come out from the backyard and speak to them.  [Filing No. 43-1, at ECF p. 3.]  The man ignored this request and instead

2

instructed his dogs to attack anyone who came into the backyard, then went back into the house. [Filing No. 43-1, at ECF p. 3.]

At that point, Wallsmith could hear a woman who was out of view screaming and yelling for help inside, so he considered it necessary to force entry into the house. [Filing No. 43-1, at ECF p. 3.] Wallsmith moved to the front of the house and called to Dodd in the backyard to advise Dodd that he was forcing entry. [Filing No. 43-1, at ECF p. 3; Filing No. 42-3 at ECF p. 3.] Wallsmith then began trying to kick in the front door. [Filing No. 43-2 at ECF p. 3.] Dodd soon joined Wallsmith at the front of the house. [Filing No. 43-1, at ECF p. 3.] Dodd looked into the house through a window, which appeared to have been broken out recently. [Filing No. 43-1, at ECF p. 3.] There was broken glass all over the porch. [Filing No. 43-1, at ECF p. 3.] A woman then approached the front door and unlocked it. [Filing No. 43-1, at ECF p. 3.] As she did so, a man came running towards the front room screaming "Kill me!" [Filing No. 43-1, at ECF p. 3.] At this point, Dodd had reached the front door, and Wallsmith was now standing at the broken window. [Filing No. 43-1, at ECF p. 3.] Wallsmith also observed a crying child enter into the area. [Filing No. 43-2, at ECF p. 2.]

Wallsmith drew and fired his Taser at the man, later identified as Brodhead. [Filing No. 43-1, at ECF p. 3.] Brodhead screamed but did not go down. [Filing No. 43-1, at ECF p. 3.] Wallsmith fired his Taser again. [Filing No. 43-1, at ECF p. 3.] Broadhead screamed again but still was not subdued. [Filing No. 43-1, at ECF p. 3.] Dodd then fired his Taser. [Filing No. 43-1, at ECF p. 3.] The man "locked up" and fell to the floor. [Filing No. 43-1, at ECF p. 3.] Throughout these events, Dodd observed three women screaming, and two frantic children nearby in the front room of the house. [Filing No. 43-1, at ECF p. 3.]

Brodhead then fell to the floor, and Wallsmith handcuffed him. [Filing No. 43-1, at ECF p. 3.] Wallsmith located and removed five of the six Taser probes from Brodhead. [Filing No. 43-2, at ECF p. 3.] Brodhead was uncooperative in standing up and walking, so officers lifted him up and forcefully escorted him out of the residence. [Filing No. 43-2, at ECF p. 3.] A third officer, Officer R. Shuey, arrived and helped Wallsmith and Dodd escort Brodhead to a police car. [Filing No. 43-1, at ECF p. 3.] As Brodhead was being escorted, he kicked Shuey. [Filing No. 43-1, at ECF p. 3.]

Wallsmith transported Brodhead to the Howard County Criminal Justice Center. [Filing No. 43-2, at ECF p. 4.] At that point, Wallsmith was able to locate the sixth Taser probe and remove it from Brodhead. [Filing No. 43-2, at ECF p. 4.] Medics were called to examine Brodhead and provide any necessary medical treatment. [Filing No. 43-2, at ECF p. 3.] After examining Brodhead, the medics concluded that the small cuts on his arms and hands were from breaking the glass window at the residence and did not require medical attention. [Filing No. 43-2, at ECF p. 3.] Brodhead also complained to the medics of a broken right ankle. [Filing No. 43-2, at ECF p. 3.] Medics examined Brodhead's ankle and did not believe to be broken. [Filing No. 43-2, at ECF p. 3.] Brodhead later stated that his ankle injury was not the result of the officers' use of force, but rather he had injured his ankle approximately six months ago and had reinjured it two days prior to the incident. [Filing No. 43-2, at ECF p. 3.]

**IV.    Discussion**

Defendants argue that they are entitled to judgment as a matter of law on Brodhead's excessive force claims because the undisputed evidence shows no constitutional violation occurred. Alternatively, Defendants argue that even if a constitutional violation did occur, they are entitled to qualified immunity. The Court addresses each argument in turn.

### A. Excessive Force Claim

First, Defendants argue that they are entitled to summary judgment on Brodhead's § 1983 claim because the undisputed evidence shows that any force used in Brodhead's arrest was reasonable under the circumstances and necessary to subdue him. [Filing No. 42, at ECF p. 7.]

#### 1. Excessive Force Legal Standard

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "Excessive force claims are reviewed under the Fourth Amendment's objective reasonableness standard." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

> A claim for excessive force under § 1983 invokes the Fourth Amendment's protection against unreasonable seizures. The reasonableness standard is objective, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The *Graham* standard is fact-intensive, asking whether each use of force was reasonable under the totality of the circumstances, including the severity of the crimes at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Turner v. City of Champaign*, __ F.3d __, __, No. 19-3446, 2020 WL 6437305, at *3 (7th Cir. Nov. 3, 2020) (internal citation and quotation marks omitted). "Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide." *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012). *See also Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020) ("[W]e may consider reasonableness as a matter of law when there are sufficient undisputed material facts to draw a conclusion."); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) ("[W]hen material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do

except second-guess the officers.  In this situation. . . the reasonableness of the force used is a legal question."  (Internal citations, quotation marks, and emphasis omitted)).

### 2. Use of Force Against Brodhead

The undisputed material facts here, viewed in the light most favorable to Brodhead, establish Defendants acted in an objectively reasonable manner as a matter of law when they used their Tasers on Brodhead to subdue and arrest him.  Defendants had probable cause to arrest Brodhead for serious felonies, including burglary and criminal confinement.  Upon arrival to the residence, Defendants observed a shattered windshield and broken stone statue in the street, in addition to broken glass on the porch of the house scattered around a broken window.  From outside the house, Defendants heard a woman inside the house screaming for help and Brodhead saying, "Ya'll motherf***in' police are going to have to kill me tonight!"  Brodhead ignored Dodd's request to come out and speak with the officers.  When Defendants entered the home, Brodhead ran toward the front room while screaming for them to kill him.  Before deploying his Taser, Wallsmith observed a crying child enter the area.  Thus, Defendants reasonably believed Brodhead had broken through a window to regain entry into the house, where a woman sounded distressed and a young child was also present.  Because these facts are undisputed, the "reasonableness of the force used is a legal question." *Cyrus*, 624 F.3d at 862.

Under these circumstances, Defendants' use of force was reasonable considering the severity of the crimes at issue, the threat Brodhead posed to others, and his active resistance to arrest.  Brodhead ignored police commands and displayed violent and destructive behavior.  He ran toward the front of the house saying that Defendants would have to kill him.  Moreover, Defendants reasonably believed Brodhead had confined a woman and child in the house with him.  These facts all support Defendants' use of force.

Furthermore, Defendants used the least amount of force necessary to subdue Brodhead after he ignored Dodd's request to come outside and speak with the officers, deploying a third shot of the Taser only after the first two shots were not sufficient to stop him from actively resisting arrest.  *Cf. United States v. Norris*, 640 F.3d 295, 303 (7th Cir. 2011) (finding officer's use of Taser reasonable where the defendant "displayed an unwillingness to accede to reasonable police commands, and his actions suggested an intent to use violence to fend off further police action.").  Because Defendants' use of force was reasonable, Defendants did not violate Brodhead's Fourth Amendment rights.  *See, e.g., Dawson*, 803 F.3d at 835 ("Therefore, we hold that Officer Brown did not use excessive force, but rather acted as a reasonable officer under the circumstances.").  Accordingly, Defendants are entitled to summary judgment on Brodhead's excessive force claims.[1]

## V. Conclusion

The undisputed facts conclusively demonstrate that Defendants used reasonable force in detaining Brodhead and did not violate Brodhead's Fourth Amendment rights.  Accordingly, Defendants' motion for summary judgment [Filing No. 41] is granted.

Date: 11/25/2020

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

---

[1] Because the Court finds no Fourth Amendment violation, the Court need not reach Defendants' alternative argument that they are protected by qualified immunity.  *See, e.g., Flournoy v. City of Chi.*, 829 F.3d 869, 877 n. 10 (7th Cir. 2016) ("The defendants alternatively argue that we should affirm based on qualified immunity.  Because we uphold the jury's verdict that no constitutional violation occurred, we do not reach this alternative argument.").

Distribution:

All ECF-registered counsel of record via email

JUSTIN BRODHEAD
HOWARD COUNTY JAIL
1800 W. Markland
Kokomo, IN 46901